# IN THE COURT OF APPEALS OF IOWA

No. 17-1393
Filed December 6, 2017

**IN THE INTEREST OF S.D.,**
**Minor Child,**

**C.D., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

A mother appeals the order adjudicating her child as a child in need of assistance. **AFFIRMED.**

Neven J. Conrad of Baker, Johnsen, Sandblom & Lemmenes, Humboldt, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Sarah J. Livingston of Thatcher, Tofilon & Livingston, P.L.C., Fort Dodge, for minor child.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge.**

A mother appeals the order adjudicating her child as a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) (2017) (defining a CINA as an unmarried child who "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child") and 232.2(6)(g) ("[w]hose parent . . . fails to exercise a minimal degree of care in supplying the child adequate food . . . and refuses other means made available to provide such essentials").

The child, S.D., was born in September 2016 weighing six pounds and one-half ounce. Wellness checkups indicated the child was gaining weight adequately, though the child continued to be in a very low weight range. At a March 23, 2017 checkup the child weighed thirteen pounds, eight ounces, which is in the first percentile. The mother was instructed to attempt a regular feeding schedule, was advised about appropriate foods, and was told to have the child's weight checked weekly. A follow-up appointment was made but cancelled by the mother. A weight check was conducted on April 6, 2017; the child then weighed thirteen pounds, fifteen ounces.[1]

On May 26, the mother and her new husband[2] presented the child to a Minnesota emergency room. The child was dehydrated from diarrhea and

---

[1] Medical testimony indicated a child should gain approximately five to seven ounces per week following birth.

[2] The mother was not married to the child's biological father, L.M., who lived in Iowa. The mother, her two children (S.D. and a three-year-old), and her paramour, J.H., went to Las Vegas in May 2017. The mother and J.H. were married in Las Vegas and then

weighed twelve pounds, twelve ounces. The mother indicated she was breastfeeding the eight-month-old child but the child also ate solid foods such as pizza and cheeseburgers. The mother did not want any testing done on the child and did not want the child to be given formula.

The hospital personnel contacted human services. An emergency removal order was entered, and the child remained hospitalized for two weeks. A child-abuse assessment was conducted and founded against the mother for neglect due to malnourishment and failure to provide adequate foods. It was also noted the mother had not followed up with weight checks on the child despite medical concerns expressed in March 2017.

S.D.'s biological father, L.M., came to Minnesota and visited the child. A home study found his home was safe for the child. Following the child's release from the hospital, the child was placed in L.M.'s care, under the supervision of the department of human services (DHS).

A CINA adjudication and disposition hearing was held on August 23, after which the juvenile court found the State had presented "absolutely overwhelming" evidence that the child was a CINA. The court noted:

> In making my decision, I have relied upon the medical professionals. The testimony of Kathleen Lee, the pediatric nurse-practitioner at Unity Point, indicates to me that her findings at the six month well-baby check were abnormal. Miss Lee specifically noted poor weight gain. Even if the mother had no clue prior to March of 2017, that the child's weight was a concern, she certainly did after that appointment with Ms. Lee on March 15th of 2017. Miss Lee indicated that because of the weight concerns, she wanted the child to have a weekly weight checkup or check. . . .

returned to the Midwest with S.D. but without the three-year-old, who they left in the maternal brother's care.

She also told the mother to start baby cereal and baby foods. Cheeseburgers, pizzas, pop, hard candy. Those certainly do not constitute baby cereal and baby foods. Miss Lee indicated that three meals a day should be provided with bottles and breast milk in between. Baby foods starting with vegetables before fruits were recommended. The mother didn't follow this recommendation either. . . . Miss Lee also told us that she attempted to teach the mother at the March appointment. Talked about iron-fortified cereals, advancing foods one at a time two to three days apart, spoon-feeding, and especially limiting choking foods and other foods such as juice, honey, and eggs until the child was older. . . . If you have a baby who is so small and is told that it is abnormal and concerning with poor weight gain, it is not reasonable and certainly not in the child's best interest to give the child cheeseburgers and pizza.

Miss Lee also told us that adult table foods would be okay if they were put through the blender and pureed. . . . The child had merely two teeth when he was examined in May of 2017 in Minnesota. The medical reports indicate that the child did not know how to chew and had to be taught how to chew, how to suck on a bottle.

The mother's lack of insight and understanding into this issue is especially concerning to the court. We have a baby who should be gaining weight every single week. This baby has not only not gained weight, this baby has lost weight prior to his hospitalization in May. I find it amazing and concerning that because this baby wasn't fed that he was subject to hospitalization in Minnesota for two weeks. To say that the mother was confused or did not understand, we have a problem. Court intervention is necessary.

It's in the child's best interest that he be adjudicated, so that we can provide not only care for this baby, but also apparently some education to the mother and until I see some sort of understanding on the mother's part about the seriousness of this issue, I am not comfortable returning this child to the mother's care. Miss Lee told us that her safety concerns[] with the lack of weight gain is a lack of growth and she specifically mentioned the brain. If the child is not growing, the brain is not growing. There are delayed milestones, there are also physical effects and this lack of growth can be permanent.

The parties then waived notice and stipulated to proceeding immediately to disposition. Additional testimony was presented. It was observed the child remains in the care of L.M. and is doing well, gaining weight, and meeting

developmental milestones. The social worker assigned to the case recommended placement with the biological father and his wife and continued supervised visitation between mother and child. A detailed written ruling of adjudication and disposition was entered on August 25.

On appeal, the mother objects to the admission of hearsay in the juvenile court, contends there is not clear and convincing evidence to support the CINA adjudication under either statutory provision relied upon, and maintains adjudication is not in the child's best interests. Upon our de novo review, *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014), we reject the mother's contentions, find CINA adjudication is in the child's best interest, and affirm.

A report made by the DHS is admissible in a CINA proceeding "notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent." Iowa Code § 232.96(6). Here, we conclude there was no danger of unfair prejudice because the information about which the mother complains was cumulative or otherwise in the record.

Moreover, there is clear and convincing evidence the child was in need of assistance as the child was not getting sufficient nutrition, was losing weight, and was malnourished despite the mother's claims that the child was breastfeeding and eating solid foods. We acknowledge the mother faced challenges in her efforts to properly feed the child—low breastmilk production, moderate tongue-tie, and two bouts of an illness causing vomiting and diarrhea. No one contends the mother was deliberately withholding food from the child. There is also evidence the mother attempted to follow some of the medical advice given to her.

We also acknowledge the child was a small baby at birth and perhaps under the best of circumstances may not have gained the average amount expected of a normal child.

Notwithstanding these challenges and efforts, the mother was unaware or unable to comprehend the seriousness of the child's condition and her role in it. The mother did not want hospital personnel to provide formula to the child nor did she want to feed the child formula despite the clear evidence the child was not gaining sufficient weight. When being informed the child needed to be hospitalized, she stated she wanted the child taken to a different hospital.[3] Although she was instructed to feed the child baby food, she informed medical personnel the child preferred table food; yet the child only had two teeth and did not know how to chew. The child gained weight when properly cared for, and continues to gain weight and meet developmental milestones. We affirm adjudication under section 232.2(6)(c)(2) and (g) and conclude CINA adjudication is in the child's best interests.

The mother also challenges the disposition, continued removal, and placement with the biological father. She contends the disposition was not in the child's best interests as the child only knew one parent, herself, because the father had never seen the child. We acknowledge we do not know of all of the difficulties the DHS may have faced in their efforts to supervise placement with the mother. But the mother has not fully followed instructions of medical personnel in the past, and the DHS recommended placement with the father

---

[3] As noted earlier, the child remained hospitalized for about two weeks.

because of the concern the mother would again not follow their instructions and would "fall back into some of the same patterns."  Although a close decision, we affirm.

**AFFIRMED.**